IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CARLINE MERISIER,                    §
                                     §
          Plaintiff,                 §
                                     §
V.                                   §          No. 3:19-cv-2911-X-BN
                                     §
JOHNSON COUNTY, TEXAS, ET AL.,       §
                                     §
          Defendants.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Through a *pro se* first amended complaint filed December 19, 2019, Plaintiff

Carline Merisier alleges a series of claims stemming from at least two arrests, years

apart – in 2015, in Denton County; and in 2017, in Tarrant County, an arrest

allegedly influenced by authorities in Johnson County, which lies within this judicial

district and division [Dkt. No. 5] (the FAC).

United States District Judge Brantley Starr referred Merisier's case to the

undersigned United States magistrate judge for pretrial management under 28

U.S.C. § 636(b) and a standing order of reference.

Before the Court now are two motions to dismiss, *see* Dkt. Nos. 20, 21, & 40,

and Merisier's motion for leave to file a proposed second amended complaint, *see* Dkt.

Nos. 37 & 37-1. All motions have been briefed. *See* Dkt. Nos. 43-46, 49, 50, 52, & 53.

And the undersigned enters these findings of fact, conclusions of law, and

recommendation that, for the reasons and to the extent explained below, the Court

should grant the motions to dismiss and deny the motion for leave to file the proposed

second amended complaint.

## Applicable Background

Merisier, paying the fee to do so, filed an initial complaint concerning the two, unrelated arrests on December 10, 2019. *See* Dkt. No. 3. The next day, the undersigned recommended that the Court sever the claims related to the Denton County arrest (against Defendants Nebraska Furniture Mart (NFM) and Casey McGregor) and dismiss those claims without prejudice under 28 U.S.C. § 1406(a). Merisier did not object to this recommendation but instead filed the FAC, which remains the operative complaint.

The FAC expanded on Merisier's initial claims. And, while she maintains that she was falsely arrested/falsely imprisoned by an Arlington police officer and by officials in Johnson County, most of her amended claims stem from events that occurred earlier, in Denton County. *See* Dkt. No. 5. After the FAC was filed, the Court accepted the undersigned's December 11 recommendation and dismissed the claims against McGregor under Section 1406(a), since NFM was not named as a defendant in the FAC. *See* Dkt. No. 7.

Defendants Denton County Criminal District Attorney's Office and Michael Dickens then moved to transfer venue. Merisier responded. And, accepting the undersigned's recommendation, the Court granted the motion to transfer insofar as it severed Counts IV, V, VI, VII, VIII, IX, X, and XI in the FAC, against Defendants Denton County Criminal District Attorney's Office, Michael Dickens, TXFM, Inc., and Casey McGregor, and transferred those claims to the Sherman Division of the

Eastern District of Texas, denying the motions filed by these defendants without prejudice to their refiling in the transferee court. *See Merisier v. Johnson Cnty., Tex.*, No. 3:19-cv-2911-X-BN, 2020 WL 3810287 (N.D. Tex. Mar. 31, 2020), *rec. accepted*, 2020 WL 3798864 (N.D. Tex. July 6, 2020); *see also Merisier v. Johnson Cnty., Tex., et al.*, No. 4:20-cv-520-SDJ-CAN (E.D. Tex.).

Now, Defendants Johnson County, Texas, Bill Moore, Stuart Madison, and Jeffrey Acklen (the Johnson County Defendants) move to dismiss Merisier's claims against them, as alleged in the FAC, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that she lacks standing and that she has failed to state a claim upon which relief can be granted. *See* Dkt. Nos. 20 & 21. And Defendant Zachary T. Jones moves to dismiss the claims against him, as alleged in the FAC, under Rule 12(b)(6). *See* Dkt. No. 40.

In addition, Merisier moves for leave to again amend her claims, in response to the motions to dismiss. *See* Dkt. No. 37.

And the undersigned briefly notes that, as reflected in her own allegations, Merisier's claims are related to existing litigation filed in this district by her husband, who has proceeded under the pseudonym John Roe but who Merisier identifies by his name, Vandame Valentine Jeanty. *See Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357 (N.D. Tex. July 29, 2019), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019); *Roe v. United States*, No. 3:19-cv-792-C-BK, 2020 WL 2119349 (N.D. Tex. Feb. 28, 2020), *rec. adopted*, 2020 WL 1434505 (N.D. Tex. Mar. 24, 2020), *aff'd in part & rev'd in part*, ___ F. App'x ___, No. 20-10329, 2020 WL

7134140 (5th Cir. Dec. 4, 2020) (per curiam); *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2020 WL 6576784 (N.D. Tex. July 31, 2020), *rec. accepted in part*, 2020 WL 5542333 (N.D. Tex. Aug. Sept. 15, 2020).

The Court may take judicial notice of the existence of these lawsuits but not Jeanty's allegations, as his allegations are neither undisputed nor made in this proceeding. *Compare Arkansas v. Wilmington Trust Nat'l Ass'n*, No. 3:18-cv-1481-L, 2020 WL 1249570, at *7 n.5 (N.D. Tex. Mar. 16, 2020) (Under Federal Rule of Evidence 201, "the mere fact a document is a public record does not alone justify taking judicial notice of the document's contents unless the contents are highly indisputable." So, while "the court may take judicial notice that [a party] filed a motion" in a separate proceeding, "it cannot take judicial notice of the facts alleged" if they are "subject to dispute."), *with Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) ("Plaintiff asks the Court to take judicial notice of more than 100 pages of documents, consisting primarily of allegations made by other parties in other lawsuits. Those allegations are not 'adjudicative facts' within the meaning of Federal Rule of Evidence 201, nor are they generally known or beyond reasonable dispute. Accordingly, these facts are not appropriate for proof by judicial notice." (citation omitted)).

## Legal Standards

I.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election*

*Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As such, the Court must dismiss a complaint for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). And where, like here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack on jurisdiction is considered "facial," and the Court need look only to the sufficiency of the allegations of the plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).

A "factual" attack on jurisdiction, however, is based on affidavits, testimony, and other evidentiary material. *See id.* Under such an attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit

facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523; *see also Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. May 1981) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." (quoting *Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977))).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

II.    Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

Aside from "matters of which judicial notice may be taken under Federal Rule

of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). And documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

III.    <u>Federal Rule of Civil Procedure 15(a)</u>

Where a party may not amend a pleading as a matter of course, *see* FED. R. CIV. P. 15(a)(1), and no court-imposed deadline by which to amend has expired, *see* FED. R. CIV. P. 16(b)(4); *Shepherd v. City of Shreveport*, 920 F.3d 278, 287-88 (5th Cir. 2019),

> [l]eave to amend must be "freely given when justice so requires." FED. R. CIV. P. 15(a). "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (internal quotations omitted). Similarly, "[a] district court may deny a proposed amendment for futility – meaning the amended complaint would fail to state a claim upon which relief could be granted." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000)).

*Petty v. Great West Cas. Co.*, 738 F. App'x 414, 414-15 (5th Cir. 2019) (per curiam) (citation modified); *see also Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion"'" for leave to amend. (quoting *Marucci*

*Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)));

*Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir.

2017) (per curiam) ("Ordinarily, 'a *pro se* litigant should be offered an opportunity to

amend his complaint before it is dismissed.' Rule 15(a) provides that leave to amend

shall be 'freely' given 'when justice so requires.' '[T]he language of this rule "evinces

a bias in favor of granting leave to amend."' Granting leave to amend, however, is not

required if the plaintiff has already pleaded her 'best case.' A plaintiff has pleaded

her best case after she is 'apprised of the insufficiency' of her complaint. A plaintiff

may indicate she has not pleaded her best case by stating material facts that she

would include in an amended complaint to overcome the deficiencies identified by the

court. Similarly, a district court need not grant a futile motion to amend. 'Futility is

determined under Rule 12(b)(6) standards, meaning an amendment is considered

futile if it would fail to state a claim upon which relief could be granted.'" (citations

omitted)).

## Analysis

Merisier's moving for leave to file a second amended complaint to address

motions filed to dismiss the operative complaint (the FAC) before the Court

transferred half of her claims (as asserted through the FAC) to the Eastern District

of Texas puts this proceeding in an unusual posture. But, considering (1) that

Merisier has attached to her motion for leave a proposed second amended complaint,

*see* Dkt. No. 37-1, which she contends considers "motions to dismiss and replies by all

Defendants (save one) wherein several deficiencies are identified and issues raised in

Plaintiff's Responses to the motions to dismiss that were not pleaded in the live pleading," Dkt. No. 37 at 2; (2) that Officer Jones and the Johnson County Defendants have responded to the motion for leave, *see* Dkt. Nos. 43 & 45, "to specifically address whether leave to amend would be futile," Dkt. No. 38 at 3; and (3) that Merisier has replied to their "futility" responses, *see* Dkt. Nos. 52 & 53, the Court can compress its analysis and address the remaining motions to dismiss by considering the claims against the moving defendants as set out in the proposed second amended complaint.

In that proposed pleading, Plaintiffs' factual allegations leading to her arrest and shortly thereafter are:

> On December 19, 2017, Plaintiff was scheduled to appear for a pretrial hearing in Denton County 158th District Court at 1:30 p.m.
>
> On December 19, 2017, around 6:00 a.m., Plaintiff's fourteen (14) year-old daughter accosted her younger brother to the school bus, which assigned stop was right in front of the family's residence. According to Plaintiff's daughter, as she made her way back into the residence, two white men scurried behind her. She panicked, ran inside, quickly closed the door and screamed to alert her parents of the stranger who was scurrying behind her.
>
> Plaintiff's daughter alerted the Plaintiff of the two men who were following her and attempted to enter the residence as she quickly shut the door. Upon looking outside, Plaintiff saw a massive law enforcement presence with several police vehicles and law enforcement officials from different agencies.
>
> Plaintiff then alerted her husband. Distrust of law enforcement, and in light of the strings of police-involved shootings of black men and other brown people around the country, and fearing he may be shot by police, Plaintiff's husband instructed the Plaintiff and other occupants not to open the door unless the police obtained a search warrant.
>
> After several knocks on the front door, neither Plaintiff nor anyone in Plaintiff's residence were willing to open the door until the officers obtain a warrant.
>
> About an hour or so later, a neighbor contacted Plaintiff via telephone and informed Plaintiff there were a massive police presence outside. The neighbor also informed Plaintiff that one of the cops who was surveilling Plaintiff's home in the last three months … was part of

the throngs. Plaintiff gave the phone to her husband who told the neighbor to tell the police to "get a warrant!"

Four hours later, more police cars showed up and the entire neighborhood was lined up with police cars. Two Federal officials from Immigration & Customs Enforcement (ICE) and Department of Homeland Security also joined the massive police presence.

About 45 minutes to one hour following the ICE agents' arrival, Defendants Jeffrey Acklen, Zachary Jones, Brett Worman, Ronald Herd, and the DHS agents approached the residence, announced they had a warrant, and warned they were about to breach the door unless it were immediately opened.

Upon hearing a warrant was purportedly acquired, Plaintiff immediately opened the front door. As soon as the several officers make their entry, a female DHS agent yelled out "search warrant. Everyone get on the floor!" Plaintiff quickly complied, but requested a copy of the search warrant. Plaintiff was ordered "you stay here, do not move. You are under arrest!" The male DHS agent who accompanied the female agent then warned "you better show me where he is [referring to Jeanty] before I break everything in your beautiful home." The multi-agency government officials searched Plaintiff's entire home, including attic, backyard, and shed.

When Plaintiff informed the law enforcement officials that she had a court hearing to attend to in Denton County at 1:30 p.m., Defendant Acklen yelled "no, you are not going anywhere; you are under arrest!" and ordered Plaintiff to be escorted out of her home by Defendants Jones and Worman while Acklen and the DHS agents searched Plaintiff's entire home until they locate Plaintiff's husband.

While outside of the residence, flanked by Jones and Worman, panicked and worried she was about to miss her pretrial court hearing in Denton County, Plaintiff also informed Jones and Worman that she had to leave to attend a court hearing. They (Jones and Worman) told Plaintiff she was not free to leave and that she was under arrest.

After locating and arresting Mr. Jeanty, the two DHS agents and Defendant Acklen escorted Jeanty to an awaiting Johnson County Sheriff patrol vehicle. Defendant Acklen got on the phone with Defendant Michael Dickens, the assistant district attorney who was the lead prosecutor in Plaintiff's Denton County case and said something to the effect that he (Acklen) had two people in custody who "appear to be the suspects."

Acklen approached and asked of Plaintiff "are you Carline Merisier," to which Plaintiff responded in the affirmative. Defendant Acklen relayed that information to Defendant Dickens, hanged up the phone and nodded an affirmative nod to Defendants Jones and Worman. Immediately following the affirmative nod, Defendant Jones, ordered

Plaintiff to turn around. Plaintiff complied and Jones placed her in handcuffs as the other officers, including Acklen, Worman and Herd looked on approvingly.

When Plaintiff began crying and kept complaining she had a court hearing to attend to, Defendant Acklen said "that's what you get for slamming the door in my face!" and walked off. Both Defendants Jones and Worman escorted Plaintiff to their police patrol vehicle, booked and detained Plaintiff in the Tarrant County Jail.

When Plaintiff pleaded with Jones and Worman, reminding them a warrant will be issued for her arrest if she failed to attend her court hearing in Denton County, Jones responded angrily "you shoulda thought of that before you refused to open the damn door when we ordered you to!"

Defendant Worman remarked that Plaintiff deserves whatever happens to her because she had nearly 20 cops waiting outside for more than 5 hours, getting wet in the rain and having to obtain a warrant before allowing them to come inside her residence.

Plaintiff was charged with the criminal offense of Hindering Apprehension/Prosecution, Texas Penal Code § 38.05(a), a misdemeanor. Defendants Jones and Worman never told Plaintiff which offense she was being charged with. Plaintiff learned of the nature of her charges after a bail bonds company informed her of the charges.

Dkt. No. 37-1, ¶¶ 16-32 (footnotes omitted).

Merisier also attaches two exhibits to her proposed second amended complaint: Exhibit A is an Arlington Police Department Field Case Report, containing a narrative of her arrest, *see id.* at 54-60; and Exhibit B is State's Motion to Find Bond Insufficient, filed in *State of Texas v. Vandame Valentine Jeanty*, No. M201501849 (Cnty. Ct. at Law No. 1, Johnson Cnty., Tex.), attached to which is an affidavit by Defendant Acklen, sworn on December 19, 2017, *see id.* at 61-65.

The impact of Merisier's including these exhibits will be discussed below. But the Court should begin with the Johnson County Defendants' arguments as to Merisier's standing.

I.    Merisier has alleged standing to assert violations of her Fourth Amendment rights, so the Court should deny the motion to dismiss under Rule 12(b)(1) insofar as Merisier has standing to assert Fourth Amendment claims personal to her alleged injuries.

Standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III'" that "is not subject to waiver and requires strict compliance." *Gohmert v. Pence*, ___ F. Supp. 3d ____, No. 6:20-cv-660-JDK, 2021 WL 17141, at *2 (E.D. Tex. Jan. 1, 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), then citing *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Raines v. Byrd*, 521 U.S. 811, 829 (1997)), *aff'd*, ___ F. App'x ____, No. 21-40001, 2021 WL 18454 (5th Cir. Jan. 2, 2021) (per curiam).

> Article III standing requires a plaintiff to show: (1) that he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that "the injury is fairly traceable to the challenged action of the defendant"; and (3) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (5th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.*

*Id.* at *3; *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))).

A plaintiff also generally lacks standing based on injuries to a third party. *See, e.g.*, *Andrews v. Cnty. of Haw.*, Cv. No. 10-00749 DAE, 2012 WL 425167, at *8 (D. Haw. Feb. 9, 2012) ("[T]he Court finds that Rohr lacks standing to assert a [42 U.S.C.] § 1983 claim based on the alleged false arrest of her husband. The Ninth Circuit has expressly held that '§ 1983 damages are available only for violations of a party's own constitutional rights.'" (citations omitted)); *Walsh v. Gilliam*, 1:19-cv-00082-MR-WCM, 2020 WL 908897, at *8 (W.D.N.C. Feb. 25, 2020) ("Plaintiff likewise does not have standing to bring claims for false arrest, kidnapping, excessive force, police brutality or any other claims on behalf of her employee Frank Gooden. Because Fourth Amendment rights are 'personal rights' that cannot be 'vicariously asserted,' Gooden is the only one who has standing to bring such claims." (citation omitted)).

And the Johnson County Defendants assert that Merisier "essentially challenges the issuance of the search warrant for her husband's arrest and her arrest by the Arlington Police Department," Dkt. No. 45 at 14 (citing Dkt. No. 37-1, ¶¶ 23-32, 85), and argue that she

> does not have standing to complain about the sufficiency of the warrant to effectuate Jeanty's arrest, as questions regarding the propriety of issuance is for Jeanty to challenge – not Plaintiff. As for her arrest, Plaintiff attempts through her new allegations to somehow impute her arrest by the Arlington Police Department to Acklen. Plaintiff's own pleadings, however, reflect that Acklen did not arrest her. ([Dkt. No. 37-1] at ¶¶ 29-32) The Arlington Police Department arrested her, and the Tarrant County District Attorney charged her, not Johnson County and not Acklen. Adding more causes of action does not change that fact, nor does adding a "conspiracy" claim.

*Id.*; *see also id.* at 13 (asserting similar standing arguments as to David Blankenship, a defendant Merisier proposes be added to this lawsuit: "Plaintiff essentially claims

that her arrest by the Arlington Police Department was invalid because her husband's arrest was found to be without probable cause. ([Dkt. No. 37-1] at ¶ 44). Plaintiff's allegations are too tenuous to support a claim against Blankenship. He did not arrest Plaintiff, nor did any Johnson County Defendant. Plaintiff lacks standing to assert claims against Blankenship for any claims arising from her arrest in December of 2017.").

Merisier responds, first as to Blankenship, that she "has an expectation of privacy in her own home, which was invaded by the Defendants. Thus, [she] has standing to raise a fourth amendment challenge to the search of her home and her arrest." Dkt. No. 53 at 8 (citing *Rodriguez v. Ritchey*, 539 F.2d 394, 400 (5th Cir. 1976)); *see also id.* at 9 ("Plaintiff's factual allegations certainly permit the inference to be drawn that the invalid capias, issued as a result of Blankenship's arrest of Jeanty without probable cause, was the catalyst that caused Johnson County official ('Acklen') to enter Plaintiff's home without a warrant, ordered and designate her for arrest – sans an arrest warrant or probable cause." (emphasis omitted)); *id.* at 10 ("The theory of Plaintiff's claims against Blankenship is that the initial Fourth Amendment violation of Mr. Jeanty set the wheels in motion for Plaintiff's subsequent due process violations. The theory is not novel and in fact well-established …." (citing *Rodriguez v. Ritchey*)); *id.* at 11 (as to Acklen, asserting that she "has standing to challenge the unlawful entry and search to her home. Plaintiff not only has a constitutional right not to have government officials enter and search her home without a warrant, but the warrantless entry and search resulted in her arrest."

(footnote omitted)).

*Rodriguez v. Ritchey* does not concern standing. Instead, in that decision, applying Section 1983 caselaw to a Fourth Amendment claim brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Fifth Circuit "recognized that investigating officers may be subject to liability for unlawful arrest even where they did not participate in the actual arrest," *New v. Fleming*, 170 F. App'x 298, 301-02 (5th Cir. 2006) (per curiam) (citing *Rodriguez*, 539 F.2d at 400). So, while *Rodriguez* may support a Fourth Amendment claim by Jeanty against a non-arresting officer, it does support that Merisier has standing to assert that claim.

Regardless, Merisier has alleged an injury (her arrest, for example) and only insofar as she alleges that <u>her</u> Fourth Amendment rights were violated by the Johnson County Defendants' allegedly unlawful conduct, she has sufficiently alleged standing for present purposes. *See Gohmert*, 2021 WL 17141, at *3 ("'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.'" (quoting *Lujan*, 504 U.S. at 561)).[1] The Court should therefore deny the

---

[1] *See also, e.g., Walsh*, 2020 WL 908897, at *11-*12 ("The Plaintiff's Amended Complaint alleges sufficient facts to state a plausible claim that Deputies Gosnell and Doe violated her Fourth Amendment rights by searching her home without a warrant. While officers can conduct protective sweeps incident to arrest, those searches are generally limited to 'spaces in a home where a person posing a danger to the police could hide and launch an attack.' Here, the Plaintiff alleges that Deputies Gosnell and Doe opened cabinets and drawers as part of their search. Moreover, the current factual record fails to clarify whether the cabinets or drawers that were allegedly searched were within Gooden's 'grab area' when he was arrested. Because opening cabinets and drawers goes beyond the scope of a protective sweep, the Plaintiff has alleged sufficient facts to state a claim for a

Johnson County Defendants' motion to dismiss to the extent that they seek dismissal under Rule 12(b)(1) of Fourth Amendment claims that are personal to Merisier.

II.   At least as to the moving defendants, Merisier has failed to allege plausible claims in her proposed second amended complaint, so the Court should grant the motions to dismiss under Rule 12(b)(6) and deny, as futile, her motion for leave to file the proposed second amended complaint.

Turning to the substance of her proposed allegations, Merisier's attaching exhibits – a police report and an affidavit filed in state court, both recounting the events of December 19, 2017 – has consequences, as Defendant Jones has observed:

> In her proposed Second Amended Complaint, Plaintiff now affirmatively demonstrates that she has no claim against Officer Jones by including factual allegations which demonstrate that Officer Jones had sufficient probable cause to arrest Plaintiff. As set forth more fully in Officer Jones' Motion to Dismiss, Section §38.05 of the Texas Penal Code (pursuant to which Plaintiff was arrested) provides that it is unlawful to ***harbor or conceal*** a person, to whom a warrant is directed, with the intent to hinder his arrest.
>
> Plaintiff's Second Amended Complaint specifically adds the following allegations:
>
>> "Defendant Jones summarized his probable cause for the arrest as follows: Suspect aided in harboring a fugitive from law enforcement, and would not corporate [sic] with police during a search warrant execution.... Due to the size of the piece of furniture that was moved in front of the stairwell and the size of the TV there is no way that Jeanty moved that furniture by himself, and put the TV on top. I then was able to identify the female as Merisier, Carline who was taken into custody for Hindering Apprehension because there was no physical way Jeanty moved those things by himself." *See* Doc. 37-1 at page 10, par. 37.
>
> Indeed, Plaintiff goes further and attaches the arrest narrative as an exhibit to the Second Amended Complaint, which sets forth the narrative explanation in its entirety and establishes the elements of the misdemeanor offense for which she was arrested. The sentences preceding the passage quoted by Plaintiff in her Second Amended

---

violation of her Fourth Amendment rights as the owner of the searched home." (citations omitted))

Complaint taken from the arrest narrative further explain the events from the perspective of Officer Jones: "We were able to locate the wanted suspect Jeanty in a room that had a stairwell that was hidden by a tall chest of drawers with a large (apx 55"-65") flat screen TV on the top of the drawers concealing the stairwell that went up to an office above the master bedroom of the home. Upon searching the office Jeanty was located under a desk trying to avoid detection." *See* Doc. 37-1, page 58 of 65. As such, the probable cause supporting the Plaintiff's arrest is clearly set forth in the Second Amended Complaint.

Dkt. No. 43 at 4-5 (citation omitted).

Merisier replies that Jones's belief that there was probable cause to arrest her is inconsequential, *see* Dkt. No. 52 at 3; that "[a]lthough 'probable cause is a defense to a § 1983 claim based on an alleged false arrest,' 'a 12(b)(6) motion is not the appropriate forum for addressing factual disputes,'" *id.* at 4 (citations omitted); that she has alleged a lack of probable cause, *see id.* at 4-5; and that, "[a]s to Jones' contention that the narrative in the police report proves he had probable cause for the arrest because Plaintiff 'does not deny engaging in any of the operative facts set forth in the arrest narrative,' it is a misguided assumption" because "[a] plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense,'" *id.* at 5 (citation and emphasis omitted).

"Generally, when ruling on a Rule 12(b)(6) motion, the district court may not look beyond the pleadings. The court may, however, refer to matters of public record, as well as to documents attached to the complaint." *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) (per curiam) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994); *id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)); *accord Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019).

"The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." *Gill*, 941 F.3d at 511 (quoting FED. R. CIV. P. 10(c); citations omitted). Rule 10(c) therefore prohibits the Court's ignoring exhibits attached to a complaint. *See, e.g.*, *id.* at 515 ("We cannot throw out the entire arrest affidavit because K.C.R. made it part of her pleading." (citing FED. R. CIV. P. 10(c))).

And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))); *see also Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2011 WL 3567419, at *9 (N.D. Tex. Aug. 15, 2011) (*Simmons* instructs "that a genuine conflict between the complaint and a pleading exhibit requires that the court accept the exhibit rather than the factual allegations as true.").

> The rule that attached exhibits are to be considered part of the complaint when ruling on its sufficiency usually benefits the plaintiff, but not always. As [the Fifth Circuit] warned [more than] 80 years ago, a "litigant may be defeated by his own evidence, <u>the pleader by his own exhibits</u>" when "he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." *Simmons*, 113 F.2d at 813 (emphasis added). In the *Parkerson* case, for example, the Court explained: "<u>This complaint is plagued not by what it lacks, but by what it contains</u>. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more." *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966) (emphasis added).

*Gill*, 941 F.3d at 511-12 (citation modified; footnote omitted).

In *Gill*, the United States Court of Appeals for the Eleventh Circuit, starting from controlling Fifth Circuit precedent,[2] explained how a court should apply the established general rule that, where there is a conflict between them, the contents of an exhibit attached to the complaint – not its allegations – control.

> When it comes to accepting as accurate an exhibit attached to a complaint, we follow the same general pleading standards that apply under Federal Rule of Civil Procedure 8. "[M]ere conclusory statements[ ] do not suffice." So when exhibits attached to a complaint "contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document ... reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.")). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself."
>
> In *Simmons*, "the classic example," the plaintiff alleged in his complaint that he and the defendant had entered into a contract, and he attached to the complaint several letters that he asserted either formed the contract or at least showed that an implied contract had been formed. *See* 113 F.2d at 812-13. Because those letters did neither of those things, [the Fifth Circuit] affirmed the dismissal of the plaintiff's claims. *Id.* at 813. [The Court of Appeals] explained that the plaintiff could have survived a motion to dismiss if he had simply pleaded a short and plain statement alleging facts that a contract existed. *Id.* But once he attached the letters to his complaint and alleged that they were the contract or at least showed that an implied contract existed, "it became the duty of the court ... to construe th[e] letter[s] and determine [their] legal effect." *Id.* When the court did so, it appropriately found that the "letters not only did not show an express contract, but refuted the inference of an implied one." *Id.*; *cf. Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (accepting as true on summary judgment police officers' reports that plaintiff had attached to his complaint because the

---

[2] *See id.* at 512 n.2 ("In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.").

reports "refute[d] [the plaintiff's] conclusory and speculative allegation [in his complaint] about what the officers saw"). The rule is specific over speculative, concrete over conclusory.

When a complaint contains specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit, [a court should] credit the allegations in the complaint. For example, in *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014), a plaintiff sued three police officers for excessive force and alleged that one of them had slammed the plaintiff's face onto the pavement when he was arrested. *Id.* at 1265-66. The plaintiff also alleged that the officers "failed to properly and correctly document the excessive force inflicted on him and the injuries he suffered" in their reports. *Id.* at 1270. The plaintiff went into great detail in his complaint about the force that was used against him and the injuries he received, while the officers' reports did not mention any use of force at all. As a result, [the Eleventh Circuit] did not credit the police reports even though the plaintiff had attached them to his complaint. *See Saunders*, 766 F.3d at 1270.

*Id.* at 514-15 (citations omitted and modified).

In sum, under Rule 10(c), the Court must consider the exhibits that Merisier has attached to her proposed second amended complaint and then "compare each relevant allegation in the complaint with its counterpart in the [corresponding exhibit] and decide if it is specific enough to prevent that statement in the [corresponding exhibit] from being considered." *Gill*, 941 F.3d at 515.

In doing so, the Court need not consider allegations that are "too general and conclusory" to correspond to a specific statement in an exhibit. *See, e.g.*, *id.* ("[I]n the affidavit McKinney stated that one of the students had said that K.C.R. had started a fight with R.S. The complaint alleges that 'the description of the fight was deliberately false and misleading,' but it does not say what part of the description was false and misleading and in what way."). Nor need the Court credit allegations (over statements in an exhibit) where the allegations are legal conclusions or broad

assertions. *See, e.g.*, *id.* ("Other statements in the complaint that we do not credit include K.C.R.'s assertions that '[t]he Affidavit executed by Defendant McKinney does not establish probable cause" and "there are material misstatements and omissions in the Affidavit.' The first statement is a legal conclusion. The second statement is a general one so broad that it provides us no help in determining which statements in the affidavit are material misstatements or what has been omitted." (citing *Iqbal*, 556 U.S. at 678)); *see also Peña v. City of Rio Grande*, 879 F.3d 613, 620 n.9 (5th Cir. 2018) ("Defendants suggest that the court must presume the allegations in the police report to be true because Peña incorporated the report into her complaint. But Peña's proposed complaint expressly rejects those elements of the police report that conflict with her account. Hence, for purposes of Rule 12(b)(6), we presume only that the officers made the assertions contained in the report, not that those assertions are in fact truthful." (citations omitted)).

The narrative in Exhibit A provides:

On 12/19/2017, I Officer Z. Jones #3088 and Cpl. B. Worman #1836 were dispatched to 7221 Lighthouse Rd to a meet officer call. Call text stated there was an investigator from Johnson County District Attorney office was on the street a few houses north of the location and was in an attempt to serve a misdemeanor warrant on a subject located in the house.

Upon arrival, I made contact with Jeff Ackland who is the investigator from the Johnson County District Attorney's office who stated that JEANTY, VAN DAME had warrants for making false reports to police, failure to identify, and fraudulent use/possession of identifying information. Ackland had a neighbor to Jeanty that had informed him that he had seen Jeanty at the home and informed Ackland he was there. At apx 0645 a school bus pulled up outside the residence, and picked up one child, and an unknown adult walked the child to the bus, and as myself and Ackland approached the residence the unknown individual was walking back into the residence and shut

the door and locked it.

> I knocked on the door loudly, and advised that it was the police department, and that we needed the residence to come open the door. No one ever came and opened the door, and we could see people when they would look through the windows at us. Ackland was able to go and obtain a search warrant, and get it signed by a judge. When Ackland returned there were two other Johnson County Sheriff Deputies that had arrived, and we approached the front door to make entry. Ackland knocked on the door, and an unknown female opened the door and stated "I need to see the search warrant" and also stated "I plead the fifth amendment". We were able to locate the wanted suspect Jeanty in a room that had a stairwell that was hidden by a tall chest of drawers with a large (apx 55"-65") flat screen tv on the top of the drawers concealing the stairwell that went up to an office above the master bedroom of the home. Upon searching the office Jeanty was located under a desk trying to avoid detection. Jeanty was taken into custody. Due to the size of the piece of furniture that was moved in front of the stairwell and the size of the TV there is no way that Jeanty moved that furniture by himself, and put the TV on top. I then was able to identify the female as MERISIER, CARLINE who was taken into custody for Hindering Apprehension because there was no physical way Jeanty moved those things by himself.

> Merisier is married to Jeanty, and that was determined when Merisier admitted her relationship to Jeanty when asked. Merisier was then placed in handcuffs at 1100hrs, I checked them for tightness, double locked them, and placed her in the back seat of my marked patrol unit. Merisier then hunched over and attempted lie down in the seat. I then had Merisier sit up, and was able to secure her in the back seat with the seatbelt and transport her to the Arlington City Jail where she was booked in and released to jail staff.

Dkt. No. 37-1 at 58-59.

Comparing the relevant proposed factual allegations, *see id.*, ¶¶ 16-36, Merisier makes no allegations that are specific enough to prevent the Court from considering the statements in this exhibit, *see Gill*, 941 F.3d at 515. In fact, she incorporates into her allegations a fact supporting Officer Jones's probable cause determination, the placement of the furniture to hide access to Jeanty. *See* Dkt. No. 37-1, ¶ 37; *cf. Peña*, 879 F.3d at 620 n.9 (crediting allegations over a police report

incorporated into complaint because the plaintiff "expressly rejects those elements of the police report that conflict with her account").

And, instead of rejecting the facts in this exhibit, Merisier makes her own conclusions (legal and otherwise) as to the police report. *See, e.g.*, Dkt. No. 37-1, ¶ 37 ("It didn't matter to the Defendants. The Defendants had already made up their minds to arrest Plaintiff along with her husband, and thus, they intentionally failed to investigate to determine that Plaintiff was neither the one who slammed the door on their faces nor hindered Jeanty's apprehension/prosecution."); *id.*, ¶ 38 ("[T]he inference is easily made that Jones arrested Plaintiff in retaliation for Plaintiff's decision not to open the door when the police repeatedly knocked on it. Defendant Worman also confirmed Plaintiff's arrest was in retaliation for her decision not to allow the Defendants to enter her residence without a warrant."); *id.*, ¶ 41 ("The statements contained in the attached exhibits and the remarks made by the Defendants (Acklen, Jones and Worman) coupled with the fact Plaintiff was placed under arrest as soon as the Defendants entered the residence – before discovering any, much less, ***sufficient*** factual basis and circumstances to reasonably conclude Plaintiff had committed the criminal act of Hindering Apprehension/Prosecution – leaves no doubt the Defendants arrested Plaintiff in retaliation for Plaintiff's (1) purported act of slamming her door on their faces, (2) refusal to open the door unless Defendants obtained a warrant, and (3) her decision to remain silent after police entered the residence.").

But the Court may not accept as true legal conclusions, legal arguments, or

sweeping assertions. So the Court should accept as true the facts in Exhibit A to the extent that those facts conflict with factual allegations elsewhere in the complaint. *See Simmons*, 113 F.2d at 812-13; *Riley*, 355 F.3d at 377; *Gill*, 941 F.3d at 511-12.

The Court should do likewise as to Exhibit B.

Its incorporated affidavit provides:

I[, Jeff Acklen, ]am an Investigator for the County Attorney Office, Johnson County, Texas. My duties entail apprehending individuals with warrants issued by the Court. On September 11, 2017, I was given information about a warrant on Vandame Valentin Jeanty. This being a Johnson County warrant and my investigation led me to Arlington, Texas, where I ultimately determined Mr. Jeanty's address to be 7221 Lighthouse Road in southeast Arlington.

In my investigation, I determined that Mr. Jeanty frequented Florida as he has several relatives there. Mr. Jeanty would be gone for extended periods of time from the Arlington residence. On this date, December 19, 2017, I was able to obtain sufficient manpower to assist me in the possible arrest of Mr. Jeanty. We observed a school bus pull up to the residence. An individual exited the house and entered the school bus. I made a decision to act at that particular time. As I approached the front door, I observed a black female in a bathrobe standing behind a glass storm door. She looked at me and the other officers and had a very startled look. As I went to identify myself she slammed the wooden front door. I knocked and rang the doorbell several times and determined the wooden front door was locked. After repeated attempts of knocking and ringing the doorbell, I pursued obtaining a search warrant. This was obtained and I returned to the residence. Preparations were made to force entry and just as I was about to do so, the same black female opened the door. I identified myself and stated the nature of my business and told her that I had a search warrant. I asked her where Dallas (Dallas is Mr. Jeanty's nickname) was located. She asked to see the search warrant. She was given her copy of the search warrant. Myself and the officers entered the residence. After a lengthly search, it was determined by the officers that the parties in the house had moved a tall heavy dresser in front of a staircase in the master bedroom. The parties in the house went to the trouble of lifting a large flat screen television and placing it on top of the dresser. This hid the staircase very well as it was bypassed by several officers during the search. Once this dresser was moved and proceeded up the staircase to a room where Mr. Jeanty was found hiding behind a desk. A great deal

> of effort was put into hiding that staircase. Mr. Jeanty was placed under arrest without further incident.
>
> Ms. Carline Merisier was determined to be Mr. Jeanty's common-in-law wife. She being the same black female that slammed the door in my face. She was placed under arrest by the Arlington Police Department for Hindering or Harboring a Fugutive. She was transported to the Arlington Jail. Mr. Jeanty was transported to the Johnson County LEC.

Dkt. No. 37-1 at 64-65.

Again, Merisier makes no factual allegations specific enough to prevent the Court from considering the statements in this exhibit. She also incorporates this exhibit into her allegations. *See id.*, ¶ 39; *cf. Peña*, 879 F.3d at 620 n.9. And, through conclusory assertions, she attempts to characterize (but not specifically refute) the facts in the exhibit to meet her narrative. *See* Dkt. No. 37-1, ¶¶ 38-49.

The Court should therefore also accept as true the facts in Exhibit B to the extent that those facts conflict with factual allegations elsewhere in the complaint. *See Simmons*, 113 F.2d at 812-13; *Riley*, 355 F.3d at 377; *Gill*, 941 F.3d at 511-12.

And, considering the plausible factual allegations that remain after accepting the exhibits rather than the corresponding factual allegations as true, the proposed second amended complaint fails to set out viable claims that Merisier's Fourth Amendment rights were violated by the moving defendants.

As to Officer Jones's allegedly false arrest of Merisier, "[a] constitutional claim for false arrest, which [she now] brings through the vehicle of § 1983, 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)).

"The [United States] Supreme Court has defined probable cause as the 'facts

and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro*, 568 F.3d at 204 (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn, *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

As reflected above, Merisier has alleged facts that support finding that there was probable cause for her arrest by the Arlington police on December 19, 2017. *Cf. Calhoun v. Villa*, Civ. A. No. H-16-3001, 2017 WL 3701971, at *3 (S.D. Tex. Aug. 7, 2017) ("As for Calhoun's complaints that the officers who arrested him lacked probable cause to support the arrests, Calhoun's own allegations in his Complaint, that the arresting officers witnessed him – both in the street when there was a nearby sidewalk, and [on] the railroad tracks – defeat his claim." (citation omitted)), *rec. adopted*, 2017 WL 3670028 (S.D. Tex. Aug. 24, 2017), *aff'd*, 761 F. App'x 297, 299-300

(5th Cir. 2019) (per curiam) ("There is an applicable Texas statute that authorizes peace officers to make warrantless arrests in this situation: '[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.' Because both misdemeanor violations occurred within view of the officers, they would be justified in making an arrest, even though the violations were only punishable by a fine. The district court was correct in applying relevant state law to the question at hand. Because a state statute authorized the warrantless arrest in this case, the officers' actions were not unconstitutional, and the dismissal was appropriate." (quoting TEX. CRIM. PROC. CODE ANN. § 14.01; footnote omitted)).

The Court should therefore grant Officer Jones's pending motion to dismiss [Dkt. No. 40] and, considering the proposed second amended complaint [Dkt. No. 37-1], find that granting Merisier leave to amend her claims against Officer Jones, *see* Dkt. No. 37, would be futile.

The Court should also grant the Johnson County Defendants' motion to dismiss [Dkt. No. 20] under Rule 12(b)(6) for the following reasons.

As stated above, Merisier has alleged standing to bring claims that are personal to her. The personal injury that she has plausibly alleged is the search of her home on September 19, 2017 and her arrest the same day. Of the Johnson County Defendants moving to dismiss, these injuries as alleged, are fairly traceable to the individual actions taken by Defendant Acklen. *See, e.g.*, Dkt. No. 37-1 at 64-65. But, considering the controlling content of the attached exhibit that includes his affidavit, *see, e.g.*, *Rogers*, 660 F. App'x at 285 n.6, and for substantially the same reasons that

apply to Defendant Jones, Merisier has not alleged that Defendant Acklen's actions violated her Fourth Amendment rights.

As to alleged actions taken by Defendants Moore and Madison, the Johnson County Attorney and his assistant, Merisier has alleged no facts to show, or from which it may be inferred, that either defendant "acted outside of the scope of his prosecutorial duties, [so she] has not overcome the absolute immunity that attaches to prosecutors acting within their jurisdiction. And [her] claims against these defendants should be dismissed with prejudice." *Roe*, 2019 WL 5031357, at *13; *see also, e.g.*, *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))); *Bibb v. Montgomery Cnty. Sheriff*, Civ. A. No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

And, insofar as Merisier brings claims against Johnson County, a municipality, this defendant may only "be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Merisier's proposed complaint lacks "'minimal factual allegations' that ultimately could support any theory of *Monell* liability" against Johnson County. *Roe*, 2019 WL 5031357, at *17 (quoting *E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017)). For example, she has not alleged that an official policy of the County resulted in the search of her home and her arrest.

And, insofar as Merisier alleges that Johnson County may be held liable through actions by Defendant Moore, its County Attorney, under the theory that "even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim,'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)), in Texas, county and

district attorneys proceed on behalf of the State of Texas when acting in a prosecutorial capacity – as alleged here – and therefore cannot be considered municipal policymakers when acting in that role, *see, e.g.*, *Estrada v. Healey*, Civ. A. No. H-15-0092, 2015 WL 13158514, at *10 (S.D. Tex. June 4, 2015) ("'Whether an individual defendant is acting on behalf of the state or the local government is determined by state law and by an analysis of the duties alleged to have caused the constitutional violation.' *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (footnote omitted). It is well established that, under Texas law, 'when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted.' *Id.* at 678. [And t]he Fifth Circuit has held that Texas district attorneys act as agents of the State for alleged misconduct when instituting criminal proceedings to enforce state law, *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) ….").

Further, Merisier's Section 1983 conspiracy claims are not plausible absent plausible allegations that her Fourth Amendment rights were violated by a party to the alleged conspiracy. *See Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("As for his § 1983 conspiracy claim, we explained in our 1990 case *Pfannstiel* that such claims are unique. The plaintiff must not only allege facts that 'establish (1) the existence of a conspiracy involving state action,' but also '(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.' No deprivation, no § 1983 conspiracy." (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir.

1992))).

Her bystander liability claims are not plausible for the same reason – she has not plausibly alleged an underlying Fourth Amendment violation. *Cf. Whitley v. Hanna*, 726 F.3d 631, 646-47 (5th Cir. 2013) (Bystander "liability will not attach where an officer is not present at the scene of the constitutional violation." (footnote and citations omitted)).

Finally, to the extent that Merisier seeks leave to inject into this proceeding claims against Defendant Blankenship, her husband is currently pursuing substantially the same Fourth Amendment claims against Blankenship in a separate proceeding in this district. *See Roe*, 2020 WL 5542333, at *4 (finding that, "although Plaintiff has failed to concisely plead his allegations in this case, the second amended complaint does seem to contain a plausible Fourth Amendment claim against Defendant Blankenship based on a theory of malicious prosecution, which would have 'accrued when [Plaintiff's] criminal proceedings ended in his favor' and would therefore be timely" (quoting *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018))).

And Merisier has failed to plausibly allege how her alleged Fourth Amendment damages are fairly traceable to alleged actions taken by Blankenship, particularly considering that she has not plausibly alleged a constitutional violation based on the events of September 19, 2017. *See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) ("Even though Article III requires a causal connection between the plaintiff's injury and the defendant's challenged conduct, it doesn't require a showing of proximate cause or that 'the defendant's actions are the

very last step in the chain of causation.' Causation, for example, isn't precluded where the defendant's actions produce a 'determinative or coercive effect upon the action of someone else,' resulting in injury. But [a plaintiff's] injuries can't be 'the result of the independent action of some third party not before the court.' Nor can they be 'self-inflicted.'" (citations omitted)).

In sum, to the extent explained above, the Court should grant the pending motions to dismiss filed by the Johnson County Defendants [Dkt. No. 20] and by Officer Jones [Dkt. No. 40] and deny Merisier's motion for leave to file her proposed second amended complaint [Dkt. No. 37]. At a minimum, the moving defendants present ample reasons why the claims as current pled (in the FAC) should be dismissed against them. And they go further, *see, e.g.*, Dkt. Nos. 43 & 45, to show why granting Merisier leave to file the proposed second amended complaint – a complaint drafted before the Court severed at least half of her claims and transferred those claims and their associated defendants to another federal district – would be futile.

## Recommendation

The Court should grant Defendants Johnson County, Texas, Bill Moore, Stuart Madison, and Jeffrey Acklen's motion to dismiss [Dkt. Nos. 20 & 21], grant Defendant Zachary T. Jones's motion to dismiss [Dkt. No. 40], and deny Plaintiff Carline Merisier's motion for leave [Dkt. No. 37] to file the proposed second amended complaint [Dkt. No. 37-1].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: January 14, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE